UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CORTINA ROGERS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

CASE NO. 3:15-5938-DWC

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Cortina Rogers filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the Acting Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") did not err at Step Five. The vocational expert's testimony amounted to substantial evidence, and the ALJ did not err when he relied upon the testimony to find Plaintiff capable of performing work existing in the national economy.

## FACTUAL AND PROCEDURAL HISTORY

On November 16, 2009, Plaintiff filed an application for DIB, alleging disability as of December 1, 2000. *See* Dkt. 7, Administrative Record ("AR") at 21. The application was denied upon initial administrative review and on reconsideration. *See* AR 21. On February 16, 2012, ALJ Robert P. Kingsley found Plaintiff not disabled. AR 21-33. The Appeals Council denied Plaintiff's administrative appeal, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to the United States District Court for the Western District of Washington, which remanded the case for further proceedings. *See* AR 1101-1114; *Rogers v. Colvin*, 3:13-cv-05627-RSL-BAT (W.D. Wash.).

On remand, Plaintiff received a second hearing before the same ALJ, who again found Plaintiff not disabled on September 14, 2015. AR 1018-1032. The ALJ's second decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(a), (d). Plaintiff now appeals the ALJ's second decision finding Plaintiff not disabled.[1]

In Plaintiff's Opening Brief, Plaintiff argues the ALJ erred at Step Five by relying upon the vocational expert's testimony to determine Plaintiff is capable of performing other jobs existing in the national economy. *See* Dkt. 13.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referring to the ALJ's July 2015 decision.

DISCUSSION

**I.      Whether the ALJ erred in relying upon the testimony of the vocational expert at Step Five.**

Plaintiff argues the ALJ's decision (1) is contradicted by the Social Security Administration's Program Operations Manual System ("POMS") because Plaintiff's limitations constitute a "substantial loss" prohibiting her from responding appropriately to "supervision, coworkers and work situations;" and (2) is error because Plaintiff's limitations require her to engage in "accommodated jobs," thus preventing her from substantial gainful activity pursuant to Social Security Ruling ("SSR") 05-2 and 20 C.F.R. § 404.1573(c). *See id.* The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96–8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at Step Four to determine whether she can do her past relevant work, and at Step Five to determine whether she can do other work. *See id.*

The RFC is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.*

Here, the ALJ found Plaintiff had the RFC to:

> …perform light work as defined in 20 CFR 404.1567(b) except that the claimant is further limited to: occasional fingering with the left upper extremity; occasional contact with supervisors and coworkers; limited contact with males, and supporting interaction from any male supervisors; no contact with the general public; and few, if any, changes in the workplace setting.

AR 1025 (emphasis omitted). If a claimant cannot perform her past relevant work at Step Four of the sequential disability evaluation process, at Step Five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to Defendant's Medical–Vocational Guidelines (the "Grids"). *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

At Step Five, the ALJ made the following findings:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, I asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:
>
> > Production line solderer [], which the vocational expert testified is a light, unskilled SVP II occupation. The vocational expert testified that there were approximately 147,000 positions in the national economy and 2559 in Washington. However, the vocational exert also testified that those job numbers would be eroded by approximately 30% due to the limitations regarding limited contact with males and only supportive interaction for many male supervisors.
>
> > Hotel/Motel housekeeper [], which the vocational expert testified is a light, unskilled SVP II occupation with approximately 173,000 positions

> in the national economy and 3101 in Washington. Here to, though, the vocational expert also testified that those job numbers would be eroded by about 30% due to the limitations with male contact and supportive male supervisor interaction.
>
> Cutter and paster – press clippings [], which the vocational expert testified is a sedentary, unskilled SVP II occupation with approximately 35,000 positions in the national economy and 543 in Washington. The vocational expert, also again testified that those job numbers would be eroded by approximately 30% due to limitations with male contact, and supportive interaction for male supervisors.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

AR 1030-31. Plaintiff argues the ALJ's Step Five findings are contradicted by POMS, Social Security Rulings and regulations, and are error because the vocational expert's testimony does not support a finding Plaintiff can engage in substantial gainful activity.

> A. <u>Whether the ALJ's decision is contradicted by POMS because Plaintiff's limitations constitute a "substantial loss" prohibiting her from competitive employment.</u>

First, Plaintiff argues the ALJ erred at Step Five because his decision is contradicted by the POMS internal Social Security Administration document.[2] Plaintiff suggests POMS DI 25020.010A.3.a,b supports finding Plaintiff incapable of competitive employment because her RFC limiting her to limited contact with males and a supportive supervisors amounts to a "'substantial loss'" in the ability to 'respond appropriately to supervision, coworkers and work

---

[2] "The public version of POMS" may be accessed through the Social Security Administration's website. *See* https://secure.ssa.gov/poms.nsf/home!readform (last accessed June 15, 2016). That version "is identical to the version used by Social Security employees except that it does not include internal data entry and sensitive content instructions." *Id.*

situations.'" Dkt. 13, p. 7-8. POMS DI 25020.010A addresses the Commissioner's policy regarding mental limitations. Subsections 3.a, b provide:

> Mental Demands of Unskilled Work
>
> a. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to:
> o understand, carry out, and remember simple instructions;
> o make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
> o respond appropriately to supervision, coworkers and work situations; and
> o deal with changes in a routine worksetting.
>
> b. A substantial loss of ability to meet any of the basic mental demands listed in A.3.a. above.
> o severely limits the potential occupational base and thus,
> o would justify a finding of inability to perform other work even for persons with favorable age, education and work experience.

*Available at* https://secure.ssa.gov/poms.NSF/lnx/0425020010 (numbering and emphasis omitted). The POMS goes on to provide analysis of what constitutes substantial loss, noting:

> "Substantial loss" cannot be precisely defined. It does not necessarily relate to any particular adjective, number, or percentage. In practical terms, an individual has a substantial loss of ability to perform a basic mental activity when he or she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided. This requires professional judgment, on the basis of the evidence in file in each case. The impairment in a claim of this type may meet or equal the listed medical criteria. Therefore, before making a determination that includes vocational evaluation, the adjudicator should discuss the case with a psychiatrist or psychologist to learn whether a significant part of the evidence had been previously overlooked or underrated.

*Id.* Although not having "the force of law," the Ninth Circuit has recognized the POMS as being "persuasive authority." *Warre v. Commissioner of Social Security Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006). In addition, according to the Ninth Circuit, the "POMS may be 'entitled to respect' under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994) to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially

enforceable duties on either this court or the ALJ.'" *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (citations omitted).

Plaintiff argues the ALJ's reliance on the vocational expert's testimony was error pursuant to the POMS because Plaintiff's RFC amounts to a substantial loss to engage in competitive employment. Dkt. 13, p. 7. However, POMS Section DI 25020.010A does not support Plaintiff's position. As noted above, "substantial loss" is not precisely defined, and Plaintiff has not provided any support as to why her RFC constitutes substantial loss. *See* POMS Section DI 25020.010A.3. Moreover, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Bayliss*, 427 F.3d at 1218. Here, the vocational expert testified Plaintiff's occupational base would be eroded by 30% based upon her RFC, thereby leaving Plaintiff 70% of jobs existing in the national economy available to Plaintiff. AR 1062-63. Thus, the vocational expert's testimony amounted to substantial evidence upon which the ALJ could rely to determine Plaintiff capable of performing jobs existing in the national economy.

Citing to the POMS, Plaintiff also argues Plaintiff's limitations are so severe "that Plaintiff would be unable to perform any work …. [and] [t]he vocational expert testified to as much during the hearing." Dkt. 13, p. 8. But, Plaintiff omits key pieces of the vocational expert's subsequent testimony. As noted by the ALJ in his decision, the vocational expert later opined Plaintiff could perform the jobs of production line solderer, hotel/motel housekeeper, and cutter and paster. AR 1063-65. The vocational expert also opined "[based] on employers that I have met over my many years of doing this" the available jobs in the national economy would be eroded by about 30% for each job based on Plaintiff's limitations. *See* AR 1063; *see also* 1064. A vocational expert's "recognized expertise provides the necessary foundation for his or her

testimony," and therefore "no additional foundation is required." *Bayliss*, 427 F.3d at 1218. Here, Plaintiff did not object to the vocational expert's qualifications (*see* AR 1057), and in light of Plaintiff's failure to point to any specific evidence of unreliability with the expert's testimony itself, the Court finds Plaintiff has presented no reasonable basis for challenging the ALJ's reliance thereon.

Finally, Plaintiff implies the ALJ was not permitted to elicit further testimony and notes "[i]nstead of accepting the vocational expert's initial answer that there would be no jobs that Plaintiff could perform, the ALJ continued to question the vocational expert until she provided jobs that Plaintiff could perform, but only if Plaintiff found the right supervisor." Dkt. 13, p. 8. Plaintiff again cites to no authority prohibiting the ALJ from eliciting further testimony from the vocational expert. Indeed, the Court is not persuaded by Plaintiff's argument because in certain circumstances ALJ's are required to further develop the record by eliciting testimony from vocational experts. *See*, *e.g.*, *Zavalin v. Colvin*, 778 F.3d 842, 844 (9th Cir. 2015) (noting the ALJ is required to resolve any conflicts in the vocational expert's testimony). Accordingly, the ALJ's reliance upon the vocational expert's testimony amounts to substantial evidence, and the ALJ did not err pursuant to the POMS.

    B.  <u>Whether the ALJ erred because Plaintiff's limitations require her to engage in "accommodated jobs," thus preventing her from substantial gainful activity.</u>

Second, Plaintiff argues the ALJ erred at Step Five because her limitations require her to engage in "accommodated jobs," preventing her from substantial gainful activity pursuant to SSR 05-2(4) and 20 C.F.R. § 404.1573(c). Dkt. 13, p. 8. The Court finds neither the SSR nor the regulation are applicable here.

As an initial matter, SSR 05-02(4) is inapplicable here because it applies only when a claimant has experienced unsuccessful work attempts and, here, Plaintiff only alleges

prospective unsuccessful work. SSR 05-02(4) is a policy interpretation ruling that applies to "Determination of Substantial Gainful Activity if Substantial Work Activity is Discontinued or Reduced—**Unsuccessful Work Attempt**." SSR 05-02, 2005 WL 6491604 (emphasis added). Plaintiff cites to subsection four (4), "performance of work under special conditions" as evidence she cannot engage in substantial gainful activity. Subsection Four (4) provides:

> Performance of Work Under Special Conditions: One situation under which your SGA-level work may have ended, or may have been reduced to the non-SGA level, as set out above, is "the removal of special conditions related to your impairment that are essential to your further performance of work." That is, you may have worked under conditions especially arranged to accommodate your impairment or you may have worked through an unusual job opportunity, such as in a sheltered workshop. Special or unusual conditions may be evidenced in many ways. For example, you:
>
> a. May have required and received special assistance from other employees in performing the job; or
>
> b. Were allowed to work irregular hours or take frequent rest periods; or
>
> c. Were provided special equipment or were assigned work especially suited to your impairment; or
>
> d. Were able to work only within a framework of especially arranged circumstances, such as where other persons helped you prepare for or get to and from work; or
>
> e. Were permitted to perform at a lower standard of productivity or efficiency than other employees; or
>
> f. Were granted the opportunity to work, despite your medical condition, because of family relationship, past association with the firm, or other altruistic reason.

*Id.*, 2005 WL 6491604, *3. Plaintiff argues she would "only be able to work under the special condition that male supervisors provide only 'supportive interaction' [and] Plaintiff would require especially arranged circumstances such that her contact with males, who comprise more than half of the workforce, would be limited." Dkt. 13, p. 8. Plaintiff does not argue she engaged in unsuccessful work attempts, nor does the ALJ discuss any unsuccessful work attempts by

Plaintiff. Thus, Plaintiff's reliance upon SSR 05-02(4) is misplaced and inapplicable in the instant case.

Plaintiff also argues C.F.R. § 404.1573(c) similarly provides "[i]f Plaintiff could perform only an accommodated job, she would not have the ability to do substantial gainful activity." However, C.F.R. § 404.1573(c) provides in relevant part "[i]f your work is done under special conditions, *we may* find that it does not show that you have the ability to do substantial gainful activity." 20 C.F.R. § 404.1573(c) (emphasis added). Again, Plaintiff cites to no case law or additional authority to support her assertion. Moreover, the Court notes the regulation provides the Commissioner *may* find work performed under special conditions demonstrates an inability to engage in substantial gainful activity, not that the Commissioner *will* find such work performed under special conditions demonstrates an inability to engage in substantial gainful activity. *See id.* (emphasis added). Regardless, as one court noted:

> Vocational experts may properly rely on accommodations that constitute broad vocational patterns. Social Security disability assessments are based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands. As such, the vocational inquiry focuses not on whether a specific employer might accommodate an impaired worker, but whether positions with the necessary accommodations are sufficiently available in the national economy such that a claimant may reasonably obtain employment.

*Cantrell v. Colvin*, No. 2:12-CV-01504-GMN, 2013 WL 5947808, at *7 (D. Nev. Nov. 5, 2013) (citing Mem. from Daniel L. Skoler, Assoc. Comm'r, SSA on the Am. With Disabilities Act., at 3 (June 2, 1993); *Surratt v. Astrue,* 2012 WL 1203945, *9 (D. Oregon 2012) (internal quotations and citations omitted)).

Here, the vocational expert testified Plaintiff would be able to perform the jobs existing in the national economy, including production line solderer, hotel/motel housekeeper, and cutter and paster. AR 1063-64. Further, based on her experience with employers, the vocational expert

1  testified the availability of jobs would be eroded by 30%. *Id.* In other words, 70% of jobs

2  existing in the national economy would still be available to Plaintiff. The vocational expert also

3  testified the supportive work environment would constitute a work accommodation if it were part

4  of the hiring process. AR 1066. Plaintiff has demonstrated no error by the ALJ in relying upon

5  the testimony of the vocational expert, who "properly rel[ied] on accommodations that constitute

6  broad vocational patterns" to determine the available jobs to Plaintiff. *See Cantrell*, 2013 WL

7  5947808, at *7. Accordingly, for all of the foregoing reasons, the vocational expert's testimony

8  constituted substantial evidence upon which the ALJ could rely, and the ALJ did not err at Step

9  Five.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ properly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is affirmed and this case is dismissed with prejudice.

Dated this 15th day of June, 2016.

David W. Christel
United States Magistrate Judge